UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.

RUTH M. SOTO and JOSE SOTO, her
husband,

    Plaintiffs,

vs.

WALMART INC., a Foreign Profit
Corporation; and PHILLIP BOFF,
Individually,

    Defendants.
_____/

## DEFENDANT'S NOTICE OF REMOVAL

Defendant Wal-Mart Stores East, LP, ("Walmart"), by and through undersigned counsel, and pursuant to 28 U.S.C. §§ 1332, 1441 and 1446(b)(3) and Rule 81(c) of the Federal Rules of Civil Procedure, hereby files this Notice of Removal removing to this Court the action filed in the 15th Judicial Circuit Court in and for Palm Beach County, Florida, Case No. 50 2021 CA 007538XXXXMB (AF), with full reservation of rights, exceptions and defenses, and in support thereof states:

### I.    Factual Background

1. On or about June 17, 2021, Plaintiffs filed a Complaint against Walmart in the 15th Judicial Circuit Court in and for Palm Beach County, Florida. *See* Pl.'s Complaint attached as **Ex. "A."** The Complaint was served on Walmart on June 25, 2021. *See* Affidavit of Service attached as **Ex. "B."**

2. Plaintiffs Ruth and Jose Soto allege negligence against Walmart because of past injuries Mrs. Soto allegedly sustained on or about June 3, 2020, while she walked in the premises of the Walmart store located at 4545 Hypoluxo Road, Lake Worth, Florida 33463; which are "permanent or continuing in nature" and will cause her to "suffer losses and impairment in the future." *See* Complaint at ¶¶ 6-7 (**Ex. A**).

3. Count I of the Complaint alleges that Plaintiff Ruth Soto was in the Walmart store when she allegedly slipped and fell "on a slippery, foreign substance" and that Walmart had "actual and constructive knowledge pf the dangerous condition." *See* Complaint (Ex. A) at ¶ 7. Count II is almost identical to Count I and presents the same allegations against Walmart employee Phillip Boff. ¶¶ 12-18 (**Ex. A**).

4. Plaintiffs allege that at all times material to the action, they "are and were residents of Palm Beach County, Florida." *See* Complaint (**Ex. A**) at ¶ 2.

5. Walmart Inc., is a foreign limited partnership and maintains its principal place of business in Bentonville, Arkansas. *See* Florida Department of State, Division of Corporations, Detail by Entity Name attached as **Ex. "C."**

6. Although the Complaint states that named Defendant Phillip Boff was a store manager "doing business in Palm Beach, County, Florida," it does not make any allegation regarding his residency. *See* Complaint (**Ex. A**) at ¶ 4.

7. Moreover, the Complaint fails to allege any facts indicating that named Defendant Phillip Boff was on the premises when the alleged incident occurred.

8. Thus, Plaintiff fraudulently joined Phillip Boff as a Defendant for the sole purpose of destroying diversity jurisdiction.[1]

9. Before initiating her lawsuit, Plaintiff sent a demand letter to Walmart alleging that Plaintiff had been injured and incurred total past medical expenses of approximately "$29,196.95." *See* Pl's Demand Letter attached as **Ex. "D."**

10. On April 21, 2022, Plaintiff Ruth Soto served her Answers to Walmart's Second Interrogatories. *See* Pl.'s Answers to Walmart's Second Interrogatories attached as **Ex. "E."** Plaintiff's Answers to Walmart's Second Interrogatory number 1 provides that Plaintiff's medical bills, to date, had increased and totaled approximately $66,466.57 with "ongoing treatment," and "additional liens and amounts" that "will likely increase as the case progresses." *Id*.

11. Receipt of Plaintiff's Answers to Walmart's Interrogatories, specifically those delineating a significant increase in Plaintiff's medical expenses, was the first occasion from which Walmart could genuinely ascertain that the case had become removable.

12. At the time of filing the instant lawsuit, Plaintiff filed a signed, civil cover sheet estimating that her damages exceed $100,000.00. *See* Civil Cover Sheet as **Ex. "F."**

13. Also, Count III of Plaintiff's complaint alleges that Plaintiff Jose Soto "has suffered in the past and will continue to suffer for an indefinite time in the future the deprivation of the consortium services of his wife," Ruth Soto. *See* Complaint (**Ex. A**) at ¶ 21.

14. Therefore, this Court has jurisdiction over this matter, and it is removable based on diversity of citizenship of the parties. The matter is removable based on diversity of citizenship

---

[1] As part of its Notice, and for reasons stated more thoroughly below, Walmart respectfully requests that this Court dismiss Count II of Plaintiffs' Complaint, against the store manager, for fraudulent joinder and failure to state a claim upon which relief can be granted.

because Plaintiff and Walmart are citizens of different states, the citizenship of Phillip Boff is inconsequential (especially considering that he was not working on the date of incident),[2] and the amount in controversy exceeds $75,000.00—exclusive of interest, attorney's fees, and costs.

15. Venue is proper in this Court because the state court where Plaintiff filed the Complaint, the 15th Judicial Circuit in and for Palm Beach County, Florida, is within this Court's jurisdiction.

16. Walmart reserves the right to raise all defenses and objections in this action after the action is removed to this Court.

## II. Removal is Timely

17. In accordance with 28 U.S.C. § 1446(b)(3), Walmart filed its Notice of Removal on May 23, 2022, within thirty (30) days of the date on which it received or was served a copy of Plaintiff's Answers to Walmart's Second Interrogatories. Plaintiff's Answers to Walmart's Interrogatories is the first document setting forth an amount in controversy close to the statutory requirement, $75,000.00 with the indication that Plaintiff still had "ongoing treatment" and "additional liens and amounts" that "will likely increase as the case progresses." Under Section 1446 (b)(3), the thirty-day period commenced on April 21, 2022, when Plaintiff served her interrogatory answers on Walmart. As the last day in the 30-day period was a Saturday, (i.e. May 21, 2022), the period continued to run through May 23, 2022. *See* Fed. R. Civ. P. 6(a)(1)(C). Therefore, the filing of Walmart's Notice of Removal is timely.

18. The statute governing the procedure for removal of civil actions states that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the

---

[2] In support of its Motion, Walmart attaches the Declaration of Phillip Boff as **"Ex. G."**

defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1).

19. However, "if the case *stated by the initial pleading is not removable*, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable." *Id*. (emphasis added); *see Katz*, 2009 WL 1532129, at *4 (noting "a district court may consider the complaint and *any later received paper* from the Plaintiff as well as the notice of removal and accompanying documents when deciding upon a motion to remand") (emphasis added).

20. Where the complaint seeks indeterminate damages, "'removal from state court is [jurisdictionally] proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement.'" *Pretka v. Kolter City Plaza II*, 608 F.3d 744, 754 (11th Cir.2010)[3] (quoting *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir.2001)); *see also Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000). If satisfaction of the amount in controversy is "'not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed.'" *Pretka*, 608 F.3d at 754 (quoting *Williams*, 269 F.3d at 1319); *see also Sierminski*, 216 F.3d at 949.

---

[3] Although Pretka involved removal under the Class Action Fairness Act of 2005 ("CAFA"), the court there interpreted and applied the general removal procedures of 28 U.S.C. § 1446. Pretka, 608 F.3d at 756 & n. 11.

21. The Eleventh Circuit has clarified and explained that a defendant removing a civil action pursuant to § 1446(b)(3) shall demonstrate sufficient facts to "unambiguously establish" that removal is proper. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007)[4]; *see also Pretka*, 608 F.3d at 757-58. When it is not facially apparent from the complaint that the amount in controversy has been met, a defendant cannot satisfy its burden and "unambiguously establish" removability based on the complaint—rather they must rely on some "other document or paper received subsequent to the Complaint. *See Garcia v. Wal-Mart Stores E., L.P.*, 2014 WL 1333208, at *1 (M.D. Fla. Apr. 3, 2014). Indeed, in *Lowery*, the Eleventh Circuit warned:

> [A] removing defendant's counsel is bound by Rule 11 to file a notice of removal only when counsel can do so in good faith. We think it highly questionable whether a defendant could ever file a notice of removal on diversity grounds in a case such as the one before us-where the defendant, the party with the burden of proof, has only bare pleadings containing unspecified damages on which to base its notice-without seriously testing the limits of compliance with Rule 11. *Id*. at 1184.

22. Where it is not clear from the face of the complaint that the civil action is removable, the complaint does not start the clock and removal is timely if filed within thirty days of receipt of a subsequent document revealing the case is removable. *See* in *Garcia*, 2014 WL 1333208, at *5. For example, in *Garcia*, a negligence action, plaintiff's complaint alleged an amount necessary to maintain a Florida circuit court claim. *Garcia*, 2014 WL 1333208, at *1. Approximately three months later, in response to defendant's request for admissions, plaintiff admitted that her damages exceeded $750,000.00. *Id*. Based upon this admission, the defendant store removed the case to federal court pursuant to § 1446(b)(3), and plaintiff argued in her motion to remand that removal was untimely. *Id*. The court rejected plaintiff's argument because the allegations of the complaint were insufficient for defendant "to intelligently

---

4    Lowery is also a CAFA case. However, like Pretka, its holding is not limited to CAFA.

ascertain that the case was removable." *Id*. at *5. Rather, "[i]t was only when Plaintiff admitted in discovery that her claim exceeds $75,000, that defendant could satisfy its burden to show that the amount in controversy is more than $75,000." *Id*.

23. Here, similar to *Garcia*, Plaintiff's Complaint merely alleges that this action is one for damages in excess of $30,001.00, the circuit court jurisdictional limit. *See* Complaint (Ex. A) at ¶ 1. Further, the other allegations contained in the Complaint are devoid of sufficient facts for Walmart to intelligently ascertain that the amount in controversy had been met and that the case was removable at the time service was perfected on Walmart. *See* Complaint (Ex. A). Rather, much like *Garcia*, it was only when Walmart received Plaintiff Soto's Answers to Wal-Mart's Second Interrogatories that it was evident that the action probably involved damages in excess of $75,000.00. *See* **Ex. "E."** Specifically, Plaintiff's sworn answers state that the medical expenses she has incurred thus far alone total approximately $66,466.57 with "ongoing treatment," and "additional liens and amounts" that "will likely increase as the case progresses." *Id*.

24. Notably, this total only reflects the amount of Plaintiff's known medical bills for care received from the time of the incident through April 21, 2022. *Id*. It does not account for Plaintiff's alleged future medical expenses or Plaintiff Jose Soto's loss of consortium claim.

25. Therefore, as the court held in *Garcia*, the facts stated herein and evidence attached hereto sufficiently, conclusively, and unambiguously establish that removal is timely, complete diversity exists, and the amount in controversy exceeds the jurisdictional threshold of $75,000.00, such that this Court to maintain and retain jurisdiction.

**III.    There is Complete Diversity Between the Parties**

26. In accordance with 28 U.S.C. § 1332(a)(1), "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between—citizens of different States."  This action satisfies the complete diversity of citizenship requirement of 28 U.S.C. § 1332(a)(1).

27. For purposes of 28 U.S.C. §§ 1332, 1441, a corporation is deemed to be a citizen of the State in which it is incorporated and of the State of its principal place of business. 28 U.S.C. § 1332(c). Wal-Mart, Inc. is and was a Delaware corporation, with its principal place of business in Arkansas. Wal-Mart Inc. is a publicly traded company on the New York Stock Exchange and traded under the symbol WMT. No publicly traded entity owns more than 10% of Wal-Mart Inc. Hence, Defendant is a citizen of only Delaware and Arkansas.

28. Plaintiffs are and were Florida residents. *See* Complaint (**Ex. "A"**) at ¶ 2.  Although Plaintiff's Complaint does not specifically state Plaintiffs' citizenship, "[i]t is well established that a party's residence is *prima facie* evidence of a party's domicile," and "[f]or purposes of diversity jurisdiction, a party's domicile is equivalent to his citizenship." *Katz v. J.C. Penney Corp.*, 2009 WL 1532129, *3 (S.D. Fla.) (internal citations omitted). Plaintiffs' Florida residence is *prima facie* evidence of their domicile which is equivalent to citizenship for purposes of establishing diversity jurisdiction.  *See Id*.

29. The Court should not consider the citizenship of named Defendant Phillip Boff in its determination of whether complete diversity exists for several reasons. "In determining the existence of federal jurisdiction, the Court considers the complaint as it existed at the time the petition of removal was filed." *Tynes v. Target Corp.*, 12-24302-CIV-MORENO, 2013 WL 1192355, at *1 (S.D. Fla. Mar. 22, 2013) (citing *Landmark Tower Associates v. First National*

*Bank of Chicago*, 439 F.Supp. 195 (S.D.Fla.1977). The Complaint does not state any allegation regarding Mr. Boff's individual residency or citizenship—only that he was "doing business in Palm Beach, County, Florida." Where Mr. Boff allegedly conducted business does not establish his residency or citizenship. Furthermore, as noted more thoroughly below, there is no possibility that Plaintiffs could prove a negligence cause of action against Mr. Boff, as a store manager in his individual capacity.

### IV. Complete Diversity Between the Parties Exists Because Phillip Boff, as the Store Manager, Was Fraudulently Joined for the Purpose of Destroying Diversity

30. The court must make its determination on whether a resident defendant has been fraudulently joined based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits submitted by the parties. *See Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

31. The issue of whether there is no possibility the plaintiff can prove a cause of action against the resident defendant turns on whether liability can be imposed on the resident defendant. Tynes, at *4-5. When a defendant demonstrates that "there is no possibility that plaintiff can establish a cause of action against the resident defendant…the federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." *Florence v. Crescent Resources, LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007).

32. It is well established under Florida law that, in order to be individually liable, "a corporate official must have committed or participated in the tort." *De Varona v. Disc. Auto Parts, LLC*, 860 F. Supp. 2d 1344, 1347 (S.D. Fla. 2012); *see Siciliano v. Target Corp.*, 14-80459-CIV, 2014 WL 12461368, at *2 (S.D. Fla. Aug. 4, 2014). Indeed, "[a] corporate agent or employee may not be held personally liable simply because of his general administrative responsibility

for performance of some function of his or her employment—he or she must be actively negligent." *White v. Wal-Mart Stores E., LP*, 220CV466FTM38NPM, 2020 WL 5946452, at *1 (M.D. Fla. Oct. 7, 2020) (*quoting McElveen v. Peeler*, 554 So.2d 270, 272 (Fla. 1st DCA 1989); *see also De Varona*, 860 F. Supp. 2d at 1347; *Accordino v. Wal-Mart Stores E., L.P.*, 3:05CV761J32MCR, 2005 WL 3336503, at *3 (M.D. Fla. Dec. 8, 2005) ("the defendant must have committed the alleged tortious act in his individual capacity"). Significantly, "[i]n Florida, there is no recognized cause of action for an in-absentia claim of negligent failure to maintain [a] store because Florida law requires that a corporate officer or agent be personally liable for negligence only if he or she participates in the tortious conduct." *Stephens v. Petsmart, Inc.*, 809-CV-815-T-26TBM, 2009 WL 3674680, at *2 (M.D. Fla. Nov. 3, 2009); *see Petigny*, 2018 WL 5983506, at *2.

33. For example, in *Tynes*, the plaintiff, a Florida resident, filed a negligence suit against Target, a foreign corporation, and "John Doe," an unnamed employee. *Tynes*, at *1. Target removed the case to federal court, invoking its diversity jurisdiction. *Id*. In response, the plaintiff sought to remand the case because she had since identified the "John Doe"—Wilber Hernandez—through discovery, and claimed he was a Florida resident. *Id*. Despite naming of the employee defendant, the court denied plaintiff's motion to remand. *Id*. at *2. In support of its holding, the court found that "there was little possibility that the plaintiff can prove a cause of action in negligence against the individual Target employee…[because] [t]he plaintiff failed to allege any **individual duty was owed** or that the tort in question was committed in the store manager's **individual capacity**." *Id*. (emphasis added).

34. In *De Varona*, the plaintiff, a Florida citizen, filed a negligence action against a Virginia corporation, Advance Auto Parts. *De Varona*, 860 F. Supp. 2d at 1345. Plaintiff amended her complaint to name the store manager, a Florida resident, and assert a separate count of negligence against him. *Id*. Particularly, the plaintiff alleged that the manager had a duty to use ordinary care to maintain the premises in a reasonably safe condition and breached this duty by failing to remove the condition or warn plaintiff of its existence. *Id*. Subsequently, defendant removed the action to federal court, arguing that the manager's citizenship should be disregarded because he was fraudulently joined for the sole purpose of avoiding federal jurisdiction. *Id*. at 1346. To support its notice of removal, Advance Auto Parts proffered an affidavit from the manager denying any personal responsibility for the accident, declaring that he was not in the parking lot when the alleged accident occurred, that he could not see the parking lot from his vantage point in the store, and that he had no knowledge of any hazardous condition in the parking lot on the date of the incident. *Id*. at 1346–47. Since the plaintiff relied solely on the "unsupported allegations made previously in her complaint," and "provided no facts showing that [the manager] played any role in her injuries," the court denied plaintiff's motion to remand finding that there was no possibility that the manager could be personally liable. *Id*. In support of its holding, the court emphasized that the manager cannot incur personal liability for the corporation's torts merely by reason of his official capacity or managerial responsibilities. *See Id*. (*citing Orlovsky v. Solid Surf, Inc.*, 405 So. 2d 1363, 1364 (Fla. 4th DCA 1981); *see also*; *Siciliano v. Target Corp.*, 14-80459-CIV, 2014 WL 12461368, at *2 (S.D. Fla. Aug. 4, 2014) (finding manager could not be personally liable for alleged failure to enforce [store] policies and procedures and failure to properly train staff because "it

is well established under Florida law that [the manager] does not incur personal liability for the corporation's torts merely by reason of the officer's official character"); *Boyd v. Petco Animal Supplies Stores, Inc.*, 3:18-CV-639-J-32PDB, 2018 WL 4360621, at *2 (M.D. Fla. Sept. 13, 2018) ("[The manager] does not incur personal liability for the corporation's torts merely by reason of the officer's official character… rather, this appears to be a run of the mill slip and fall case in which the store manager individually has no liability").

35. In *Petigny*, an almost identical slip-and-fall case, the plaintiff, a Florida resident, sued Wal-Mart and two resident store managers, Reinard and Pericles, in state court for injuries plaintiff allegedly sustained when she slipped and fell on grapes in a Wal-Mart store. *Petigny*, at *1. In the complaint, plaintiff alleged that each manager breached duties that the store owed to its business invitees. Thereafter, Defendants removed the case on the basis of diversity jurisdiction, contending that plaintiff fraudulently joined the store managers to destroy diversity. *Petigny*, at *1. Importantly, the court found that there was no possibility that plaintiff could establish a claim against Reinard because his sworn declaration stated that he was not present on the day of the incident, emphasizing that Florida law does not recognize an *in absentia* claim of negligent failure to maintain a store. *See* Id. at *2; *see also* Stephens, 2009 WL 3674680, at *2 (reasoning, to be personally liable, store manager "**necessarily must be present in the store at the time of the accident** in order to know of the hazardous condition and personally participate in the events leading up to the accident") (emphasis added). Although manager Pericles was in the store on the day, she too provided a sworn declaration, stating that: she was not in the area where the incident occurred prior to plaintiff's fall or during the incident; she had no prior knowledge of the dangerous condition; and she did not

participate in the incident. *Id*. at *3. Plaintiff, on the other hand, did not provide any evidence to the contrary. Thus, the court emphasized that "[a]bsent evidence she personally participated in tortious conduct, Ms. Pericles cannot be held personally liable for negligence under Florida law." As a result, the court held that "defendant has again met its high burden of establishing fraudulent joinder" and refused to consider Pericles's citizenship. Id.

36. Here, there is no possibility that Plaintiffs Ruth and Jose Soto can prove a negligence cause of action against the store manager in his individual capacity. Much like the plaintiffs in *Tynes* and *De Varona*, the Sotos failed to allege that the store manager owed any individual duty of care to Plaintiff or that the tort in question was committed in the manager's individual capacity. Indeed, Plaintiffs allege the exact opposite—that Mr. Boff owed the same non-delegable duty to properly maintain the store as Walmart. *See* Complaint (**Ex. A**) at ¶¶ 16-17. But as the Florida courts have consistently reiterated, a store manager cannot incur personal liability for the corporation's torts merely by reason of his official capacity or simply because of his general administrative responsibility for performance of some function of his employment. Plaintiff has not and cannot prove that Phillip Boff personally participated in the tortious conduct or was actively negligent. In fact, Mr. Boff has provided the Court with a sworn declaration indicating that he was not even working on the date of incident. *See* **Ex. "G**."

37. Therefore, as part of its Notice, Wal-Mart respectfully requests that this Court dismiss Count II of Plaintiff's Complaint for fraudulent joinder and failure to state a claim upon which relief can be granted. Plaintiffs cannot maintain a valid cause of action against the store manager because Florida law requires that a manager be actively negligent and Plaintiff has not and cannot allege that the store manager was at the store, at the scene, or in any way actively

negligent. As there is no possibility that Plaintiff can maintain a cause of action against the store manager, Walmart respectfully requests that Count II of the Complaint be dismissed.

**V.      The Amount in Controversy Requirement Has Been Met**

38. The amount in controversy exceeds $75,000.00. Plaintiff's civil cover sheet asserts that Plaintiff's damages exceed $100,000.00.  And it is clear from the Complaint and Plaintiff's discovery responses, that Plaintiff's claimed damages exceed the $75,000.00 jurisdictional minimum of this Court. *See Katz*, 2009 WL 1532129 at *5 (concluding the defendant met its jurisdictional burden of establishing the amount in controversy based on the medical bills cited in plaintiff's pre-suit demand); *see also Mick v. De Vilbiss Air Power Co.*, 6:10-CV-1390-ORL, 2010 WL 5140849, at *1 (M.D. Fla. Dec. 14, 2010) (relying on pre-suit demand letter seeking $175,000.00 in damages as competent evidence of amount in controversy and denying Plaintiff's motion to remand).

39. "In the Eleventh Circuit, a district court may consider the complaint and any later received paper from the Plaintiff as well as the notice of removal and accompanying documents when deciding upon a motion to remand."  *Katz*, 2009 WL 1532129, at *4 (S.D. Fla. June 1, 2009) citing *Lowery v. Alabama Power Co.*, 483 F. 3d 1184, 1213-1214 (11th Cir. 2007). "Additionally, a district court may consider evidence outside of the removal petition if the facts therein existed at the time of removal." *Id*., citing *Williams v. Best Buy Co*., 269 F.3d 1316, 1320 (11th Cir. 2001) and *Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000).   "Therefore, pre-suit settlement offers and demands may be considered in evaluating whether a case has been properly removed." *Id*.

40. Here, the relevant portions of Plaintiff's interrogatory answers citing Plaintiff's past medical

expenses along with her other asserted claims, including a loss of consortium claim, and her civil cover sheet reasonably establish that the amount in controversy exceeds the $75,000.00 jurisdictional minimum.

41. Specifically, the medical expenses and procedures that Plaintiff has undergone thus far allegedly exceed $66,466.57 with "ongoing treatment," and "additional liens and amounts" that "will likely increase as the case progresses." *See* **Ex. "E."** Furthermore, the Complaint alleges that she has sustained permanent or continuing injuries. *See* **Ex. "A"** at ¶ 11.

42. Plaintiff's aforementioned representations sufficiently and conclusively establish that, by a preponderance of the evidence, the amount in controversy exceeds the jurisdictional threshold of $75,000.00 for this Court to maintain and retain jurisdiction. The decisions of several district courts support this conclusion.

43. For example, the court in *Katz* held that the defendant seeking removal had sufficiently established that the amount in controversy was satisfied based on information included in Plaintiff's pre-suit demand package. 2009 WL 1532129 at *4. Here, Plaintiff's demand letter also sufficiently establishes that the amount in controversy is satisfied. *See* **Ex. "D."**

44. District courts have consistently found that the amount in controversy is met where it is shown that a plaintiff's pre-suit demand letter and/or other papers represented that plaintiff's past medical bills exceeded $75,000.00. For example, in *Stramiello v. Petsmart, Inc.*, the court determined that the defendant successfully met its burden of proving the amount in controversy was in excess of $75,000.00. Much like Plaintiff Soto in the instant matter, the plaintiff in *Stramiello* alleged that his injuries were permanent and that he would "seek recovery of future medical expenses and significant pain and suffering damages." *Id*. Because the court found

that defendant demonstrated complete diversity and that the amount in controversy exceeded the jurisdictional minimum, the court ultimately denied the plaintiff's motion to remand. *Id*. at *5.

45. Moreover, in *Wilson v. Target Corp.*, plaintiff's pre-suit demand letter plaintiff revealed she had sustained over $100,000.00 in past medical expenses and would suffer an additional one million dollars in future medical expenses due to an alleged accident. *Wilson v. Target Corp.*, 2010 WL 3632794, at *4 (S.D. Fla. 2010). There, the court denied plaintiff's motion to remand despite acknowledging that plaintiff did not specify the exact amount of damages sought in her complaint because it found that plaintiff's pre-suit demand letter and the unspecified damages in his complaint were enough to determine by a preponderance of the evidence that the amount in controversy surpassed $75,000.00. *Id*.

46. Indeed, courts in the Southern District of Florida have found the amount in controversy requirement satisfied even when the medical bills are below $75,000.00. *E.g. Katz*, 2009 U.S. Dist. LEXIS 51705, at *3-6 (finding the defendant satisfied its burden when the plaintiff's actual damages of approximately $58,000.00 were added to either alleged future medical expenses or to other damages alleged); *La Roca v. Stahlheber*, 676 F. Supp. 2d 1347, 1349-50 (S.D. Fla. 2009) (deciding that the amount in controversy requirement was met where the plaintiff only incurred $6,301.00 in medical bills, but was likely to incur additional yearly expenses); *Salsberry v. Rt W. Palm Beach Franchise, Ltd.*, No. 14-80922-CIV, 2014 U.S. Dist. LEXIS 193209, at *4-7 (S.D. Fla. Oct. 14, 2014) (finding the defendant satisfied its burden when the plaintiff's medical bills to date were only $16,121.66, but other damages satisfied the jurisdictional minimum).

47. Here, Plaintiff Ruth Soto's interrogatory answers provide a detailed recitation of her claimed medical expenses in excess of $66,466.57 with "ongoing treatment," and "additional liens and amounts" that "will likely increase as the case progresses." Notably, this does not include other damages claimed by Plaintiffs in their Complaint (i.e. the loss consortium claim). Moreover, Plaintiffs' owned civil cover sheet estimated that their damages exceed $100,000.00.

48. As in *Katz, Stramiello*, and *Wilson*, here, Plaintiff's medical expenses are in excess of $100,000.00 (at least)—exclusive of their loss of consortium claim and other damages alleged in the Complaint. This evidence sufficiently establishes that Plaintiff's claimed damages exceed $75,000.00. As a result, Wal-Mart has demonstrated by a preponderance of the evidence that the amount in controversy in this matter exceeds the jurisdictional minimum required, therefore rendering removal appropriate.

## VI. Conclusion

49. Walmart has timely filed its Notice of Removal and meets the jurisdictional requirements for removal of Plaintiff's underlying state court action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Upon filing of this Notice of Removal, Wal-Mart will promptly give written notice of the same to Plaintiff, through her attorney of record, and the Clerk of the Circuit Court.

WHEREFORE, by reasons of the foregoing, Wal-Mart respectfully requests that this Notice of Removal be accepted as adequate under federal law, and that Plaintiff's state court action be removed from that court to the United States District Court for the Southern District of Florida, Palm Beach Division, and that this Court assume full and complete jurisdiction over the case issuing all necessary orders along with any other relief that the Court deems just and proper.

Respectfully submitted,

          By:   */s/ Frantz Destin, Jr.*
          Frantz Destin, Jr.
          Florida Bar No. 109669
          destin@fasidibellolaw.com
          lopez@fasidibellolaw.com
          pleadings@fasibibellolaw.com
          *Counsel for Defendant*
          **FASI & DIBELLO, P.A.**
          150 SE 2nd Ave, Suite 1010
          Miami, Florida 33131
          Telephone: (305) 537-0469
          Facsimile: (305) 503-7405

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing was served by electronic mail on this 23rd day of May, 2022, to: Paul McBride, Esq. (PMcBride@800goldlaw.com; CBrito@800goldlaw.com; RPeart@800goldlaw.com; SotoRuth7234958@projects.filevine.com), Law Offices of Craig Goldenfarb, P.A., 1800 S. Australian Avenue, Suite 400, West Palm Beach, FL 33409.

          By:   /s/ Frantz Destin, Jr.
          FRANTZ DESTIN, JR.